UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-30467
No. 02-30469

_____

IN RE:  LESLIE DALE MARTIN,

Movant.

_____

Motion for Stay of Execution and for Authorization to File a
Successive Habeas Corpus Petition in the United States District
Court for the Western District of Louisiana

_____

May 10, 2002

LESLIE DALE MARTIN,

Petitioner-Appellant,

versus

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellee.

_____

Motion for Stay of Execution
Appeal from the United States District Court for the Middle
District of Louisiana
(02-CV-453)

_____

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit
Judges.

PER CURIAM:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Leslie Dale Martin seeks a stay of his execution set for today, 10 May 2002; requests permission to file a successive 28 U.S.C. § 2254 habeas application; and appeals the district court's 9 May 2002 dismissal and alternative transfer of his 28 U.S.C. § 2241 habeas application (for us to consider whether to allow it to be filed as a successive habeas application).

Martin contends: Marlin Sweet, a key witness, perjured himself and **Brady** material was not disclosed concerning him; Martin's trial counsel was ineffective and represented him under a conflict of interest; and **Campbell v. Louisiana**, 523 U.S. 392 (1998), concerning discrimination in the selection of grand jury forepersons, should be retroactively applicable on collateral review. **MOTIONS DENIED and APPEAL DISMISSED.**

I.

The following is stated in our 27 March 2001 affirmance of the denial of Martin's § 2254 habeas application.

> On 20 June 1991, Martin went to a bar in Lake Charles, Louisiana, where his companion, Roland, introduced him to the victim. Around 7:30 the next morning, Martin told his work supervisor that he had met a college student, left the bar with her, and woke up alone on Galveston Beach. The supervisor noticed scratches on Martin's forehead, neck, and shoulder that had *not* been there the day before.
>
> When Martin returned to his aunt's home (where he was residing), wearing different clothes from the previous night, and *no* shirt or shoes, his cousin observed scratches on his chest and back, a bite mark on his shoulder,

2

and a tear under his tongue. Martin explained he had fought a "country boy" at the bar.

That same morning, Martin related to another, Rushing, he thought he may have killed someone the previous night, and asked Rushing for an alibi. Although Rushing refused, Martin confided that the victim had threatened to report him for rape. Martin mentioned a shed in Iowa, Louisiana, and stated he had choked the victim with a rope, cut her throat, dug her eyes out, and jumped up and down on a wooden board placed on her neck. Subsequently, Rushing testified that Martin, who had served several years of a ten-year sentence for sexual battery, told him (Rushing) "he didn't want to be turned in for rape again".

Rushing did *not* believe Martin's story; but, nine days later, when he learned the victim had been missing since leaving the bar, he provided the information to police. During a search of sheds in the Iowa area, authorities discovered the victim's decomposing body, with a rope around her neck, and a wooden board containing human blood nearby. There was little forensic evidence. A tampon taken from the body tested negative for seminal fluid; but, a forensic expert testified that, due to decomposition, the test could be a "false negative".

Under Louisiana law, *first degree murder* includes "killing ... a human being ... [w]hen the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... *aggravated rape*...." LA. REV. STAT. ANN. § 14:30(A)(1) (emphasis added). Rape is aggravated "[w]hen the victim resists the act to the utmost, but whose resistance is overcome by force". LA. REV. STAT. ANN. § 14:42(A)(1).

*Martin v. Cain*, 246 F.3d 471, 473 (5th Cir. 2001) (emphasis in original), *cert. denied*, 122 S. Ct. 194 (2001).

3

In Martin's prosecution for first degree murder, three inmates (including Sweet) "who had been incarcerated with Martin after his arrest ... each testified, in varying detail, that: Martin told them he had sexual relations with the victim; she accused him of rape; and he killed her, because he did *not* want to return to prison. But, [of the three inmates' testimony,] *only* Sweet's ... established *aggravated rape*". *Id*. at 474 (emphasis in original). Nevertheless,

> Sweet's testimony, with the exception of that about the aggravated nature of the rape, was corroborated by a number of other witnesses and other evidence, and Sweet's testimony concerning the aggravated nature of the rape was, to some extent, corroborated by Marin's visible physical injuries shortly after the murder.

*Id*. at 481.

In 1992, Martin was convicted of first degree murder and sentenced to death. *Id*. at 474. In 1994, the Louisiana Supreme Court affirmed his conviction and death sentence; the Supreme Court of the United States denied certiorari in 1995, *Martin v. Louisiana*, 515 U.S. 1105 (1995); in 1997, the state district court denied his application for post-conviction relief, *Martin*, 246 F.3d at 475; and in 1998, the Louisiana Supreme Court denied his writ application. *Martin v. Cain*, 709 So. 2d 693 (La. 1998).

In 1999, the district court denied Martin's first federal habeas application, but granted a certificate of appealability

4

(COA) on two issues concerning ineffective assistance of counsel, and a **Brady** violation concerning Sweet. **Martin,** 246 F.3d at 475. We affirmed the denial. **Martin v. Cain**, 206 F.3d 450, 461 (5th Cir.), *vacated*, 531 U.S. 801 (2000). On remand from the Supreme Court of the United States (concerning the standard of review), we again affirmed the denial of habeas relief. **Martin**, 246 F.3d at 473.

On 7 January 2002, Martin's execution was set for 8 February 2002. On 4 February, four days prior to the execution date, Martin filed an application for post-conviction relief in Louisiana state court. The trial court denied the application on 5 February; on the same day, Martin filed in Louisiana state court a supplemental application for post-conviction relief. The trial court denied the supplemental application; and, on 8 February, the Louisiana Supreme Court denied Martin's writ application.

That same day, the Supreme Court of the United States stayed Martin's execution pending a ruling on his petition for *certiorari* concerning the state court rulings. On 25 March, the Supreme Court denied *certiorari*, **Martin v. Cain**, 122 S. Ct. 1372 (2002); Martin's petition for rehearing was denied yesterday, 9 May.

The pending request to file a successive habeas application is not Martin's first request to do so. On the prior 8 February 2002 execution date, Martin requested that we grant such permission, claiming: his counsel was ineffective due to a conflict of

5

interest; and the State had not disclosed **Brady** material concerning Sweet. We denied the request. *In re Martin*, No. 02-30157 (5th Cir. 8 Feb. 2002) (unpublished). Martin filed a "petition for habeas corpus relief" with the Supreme Court concerning this decision; the petition was denied on 15 April 2002.

On 8 April, Martin's execution date was reset for today, 10 May. On 23 April, he filed in Louisiana state court a petition for post-conviction relief. The trial court denied the petition on 2 May, and the Louisiana Supreme Court denied Martin's writ application on 9 May. That same day, Martin filed in the United States District Court for the Middle District of Louisiana a habeas petition under 28 U.S.C. § 2241.

On 9 May, the district court construed the petition as an action under 42 U.S.C. § 1983 and dismissed it for lack of jurisdiction. In the alternative, the district court transferred the petition to this court pursuant to 28 U.S.C. § 1631 for us to determine whether Martin should be permitted to file it as a successive habeas petition.

Also on 9 May, Martin filed the pending motions with this court, seeking a stay of execution as well as permission to file a successive habeas petition concerning issues completely independent from his most recent federal district court filing concerning his claim of denial of access to clemency. Today, 10 May, Martin filed a notice of appeal from the district court's 9 May judgment

6

concerning his § 2241 habeas petition, as well as another stay-of-execution motion.

## II.

### A.

In the request to file a successive habeas application, Martin presents three claims: Sweet, a key witness, perjured himself and **Brady** material was not disclosed concerning Sweet; Martin's trial counsel was ineffective due to his taking prescription psychiatric medication and representing Martin under a conflict of interest; and he is entitled to benefit from a "new rule of constitutional law" announced in **Campbell v. Louisiana**, 523 U.S. 392 (1998), concerning discrimination in the selection of grand jury foreperson. In conjunction with this request, Martin seeks a stay of execution.

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that, before "a second or successive application ... [can be] filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application". 28 U.S.C. § 2244(b)(3)(A). As stated in subpart (b)(3)(C), authorization is to be given "only if ... the application makes a prima facie showing that the application satisfies the requirements of" 28 U.S.C. § 2244(b), as quoted below.

7

A "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed". 28 U.S.C. § 2244(b)(1).

A claim presented in a successive habeas petition not presented in a prior petition shall be dismissed unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

## 1.

Martin's contention that he is entitled to relief under *Campbell* has not been presented in a prior application. He must show *Campbell* has been made retroactively applicable to cases on collateral review *by the Supreme Court*. 28 U.S.C. § 2244(b)(2)(A). "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive". *Tyler v. Cain*, 533 U.S. 656, 664 (2001) (concerning successive habeas petition relying upon § 2244(b)(2)(A)).

8

Martin contends that pending before our court in another appeal is whether *Campbell* has been made retroactively applicable. Nevertheless, for successive habeas purposes, the Supreme Court has not made *Campbell* retroactively applicable to cases on collateral review.

2.

a.

Martin's remaining claims, relating to Sweet and his trial counsel, were presented in his first federal habeas petition. *See Martin v. Cain*, 246 F.3d 471 (5th Cir. 2001). He cannot do so again. *See* 28 U.S.C. § 2244(b)(1).

b.

Even assuming *arguendo* these claims are raised for the first time, Martin has not made the required prima facie showing that: (1) their factual predicate could not have been discovered previously through the exercise of due diligence, *see* 28 U.S.C. § 2244(b)(2)(B)(i); and (2) that these assertions, if true, "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found" Martin guilty of the underlying offense, *see id.* at § 2244(b)(2)(B)(ii).

To the extent Martin relies on newly discovered evidence in support of these claims, this evidence is not sufficient to make the requisite prima facie showing that "but for constitutional

9

error, no reasonable factfinder would have found [Martin] guilty of the underlying offense." *Id.* Although the new evidence regarding Sweet further undermines his credibility and Sweet's testimony was quite important to the state's case for aggravated rape, we cannot conclude that the jury's verdict would have been different in light of the other evidence presented at trial. Although the other individuals who testified as to what Martin had told them about his commission of the offense did not provide information, as Sweet did, indicating that Martin had perpetrated aggravated rape, they did testify that Martin had told them that he had killed the victim when she accused him of rape. Further, as noted *supra*, the evidence of the physical injuries that Martin incurred on the night of the offense corroborated Sweet's testimony.

The new evidence that Martin proffers in support of his claim that he was denied the assistance of trial counsel indicates that his trial counsel, Bobby Pitre, suffered from a "mental breakdown" shortly before Martin's trial and was taking psychiatric medication during the trial. However, Martin does not attempt to demonstrate how Pitre's condition affected Pitre's performance at trial. Rather, Martin argues that prejudice should be presumed, analogizing Pitre to the counsel who slept during trial whose performance was at issue in **Burdine v. Johnson**, 262 F.3d 336 (5th Cir. 2001) (en banc). Although we do not here rule out the possibility that medication taken by counsel or counsel's mental

condition during trial may warrant a presumption of prejudice in some circumstances, Martin's new evidence does not demonstrate that his case involves such circumstances because there is no indication that Pitre was impaired in any way as a result of his medication or mental condition during Martin's trial.

### B.

Martin also contends: that he has a "free standing claim of factual innocence"; and that, as a result, AEDPA's requirements do not prevent consideration of this claim. Restated, for such "factual innocence", Martin claims an exception to AEDPA's constraints on successive habeas applications.

AEDPA prescribes our habeas jurisdiction; the claimed exception is neither recognized in, nor permitted by, it. Martin's claim to an exception to AEDPA's constraints is without merit. Moreover, this "factual innocence" claim has been repeatedly reviewed within the scheme established by AEDPA and found wanting.

### C.

Martin's 9 May 2002 habeas petition pursuant to 28 U.S.C. § 2241 maintained he has been denied access to Louisiana's executive clemency system. (This claim was denied in state court in February 2002 but not presented then to the district court or our court.) Today, 10 May, Martin filed a notice of appeal from the district court's judgment (denial). In conjunction with his appeal, he seeks a stay of execution.

### 1.

11

Before being allowed to proceed on appeal, a habeas petitioner must obtain a COA from "the final order in a habeas corpus proceeding in which the detention complained of arises *out of process issued by a State court*".  28 U.S.C. § 2253(c)(1)(A) (emphasis added).  Although a prisoner in federal custody need not obtain a COA to appeal the denial of a § 2241 petition, a prisoner in state custody, such as Martin, must do so.  *See* **Stringer v. Williams**, 161 F.3d 259, 262 (5th Cir. 1998) ("§ 2253 clearly does not encompass challenges to federal detention under § 2241.  Just as clearly, however, § 2253 does encompass challenges to state detention under § 2241".).

Martin has not sought a COA, much less satisfied the standards for obtaining one, discussed below.  Accordingly, we cannot review the habeas denial.

Alternatively, construing Martin's notice of appeal as a COA request and his brief as seeking to satisfy the standards for obtaining a COA, he has not satisfied those standards:  he has not "made a substantial showing of the denial of a constitutional right".  28 U.S.C. § 2253(c)(2).  To do so, he must show "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

12

encouragement to proceed further". *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Reasonable jurists could not disagree that the petition should be denied because Martin has *not* even applied for clemency. Furthermore, reasonable jurists could not disagree with the district court's construction of the claim as arising under 42 U.S.C. § 1983 and its dismissal of the petition for lack of jurisdiction. *See Moody v. Rodriguez*, 164 F.3d 893, 893 (5th Cir. 1999) ("Federal courts lack jurisdiction to stay executions under § 1983.") (internal quotation marks omitted).

2.

The district court, in the alternative, transferred the petition to our court for us to determine whether to authorize filing a successive habeas petition. This clemency claim does not rely on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. In addition, Martin has not shown that the factual predicate of this claim was not available previously through the exercise of due diligence *and* that, but for the claimed constitutional error, no reasonable factfinder would have found Martin guilty of the underlying offense. *See* 28 U.S.C. § 2244(b)(2)(B)(i)-(ii).

3.

In the alternative, to the extent the appeal is from the dismissal of § 1983 relief, we lack jurisdiction, as held by the district court.  *See* **Moody**, 164 F.3d at 893.

### D.

Concomitantly, Martin has failed to satisfy the standard for obtaining a stay of execution.

### III.

For the foregoing reasons all motions are **DENIED**; a COA is **DENIED**; and the appeal is **DISMISSED**.

*MOTIONS and COA DENIED; APPEAL DISMISSED*

15